UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KRISHAN AHUJA,<br><br>                             Plaintiff,<br>     v.<br>WESTERN UNITED INSURANCE COMPANY d/b/a AAA NEVADA INSURANCE COMPANY, JOHN DOES I through X, inclusive; and ROE BUSINESS ENTITIES I through V, inclusive,<br><br>                            Defendants. | Case No. 3:13-cv-00038-MMD-VPC<br><br>ORDER<br><br>(Def.'s Motion for Summary Judgment – dkt. no.113; Def.'s Motion for Partial Summary Judgment – dkt. no. 69; Pl.'s Motion to Strike – dkt. no. 101) |

**I.   SUMMARY**

Before the Court is Defendant Western United Insurance Company's Motion for Summary Judgment (dkt. no. 113). The Court has reviewed Plaintiff Krishan Ahuja's response (dkt. no. 116) and Defendant's reply (dkt. no. 117). For the reasons discussed below, the Motion for Summary Judgment is granted in part and denied in part.

Also before the Court are Defendant's Motion for Partial Summary Judgment (dkt. no. 69) and Plaintiff's Motion to Strike (dkt. no. 101). The Court has reviewed the applicable response and reply briefs (dkt. nos. 87, 93, 102, 106). The Motion for Partial Summary Judgment is denied, and the Motion to Strike is denied.

**II.   BACKGROUND**

    **A.   Factual Background**

The following facts are undisputed.

        **1.   Underlying Accident and Underinsured Motorist Claim**

While driving in Las Vegas on May 4, 2011, Plaintiff was struck by a vehicle driven by Pedro Mendoza.[1] (Dkt. no. 2-1 at 3.) Mr. Mendoza was insured by Allstate

---

[1] Mr. Mendoza is not a party to this action.

Insurance; after the accident, Allstate compensated Plaintiff to the extent of Mr. Mendoza's coverage, or $15,000. (*Id.*; *see* dkt. no. 113-7 at 2, 6.)

Plaintiff had purchased insurance from Defendant before the accident. (Dkt. no. 113-1 at 2.) Plaintiff's insurance policy included uninsured and underinsured motorist ("UIM") coverage of $250,000, and medical expenses coverage of $5,000. (*Id.*)

On August 8, 2011, Plaintiff opened a claim with Defendant for compensation pursuant to his UIM policy. (Dkt. no. 113-3 at 15–16; *see* dkt. no. 2-1 ¶¶ 6–8.) Plaintiff requested $250,000, the full extent of his UIM policy, to cover medical expenses and other losses related to injuries he allegedly suffered after the accident. (Dkt. no. 113-3 at 15–16; dkt. no. 2-1 ¶ 8.) In the process of opening the UIM claim, Plaintiff informed Defendant that he was forced to close his business, which was worth approximately $200,000, because of his injuries. (Dkt. no. 113-3 at 15-17.) Plaintiff also noted that he had suffered injuries to his shoulders for which he was receiving injections, and that he might need surgery. (*Id.* at 17.)

Shortly thereafter, on August 23, 2011, Plaintiff's UIM claim was referred to a Senior Casualty Specialist for Defendant. (*See id.* at 18-19.) The Specialist requested authorization to review medical records of Plaintiff's alleged injuries; she attempted to gather those documents between September and November 2011. (*Id.* at 20-21.) In November, Defendant began attempting to schedule an independent medical evaluation ("IME") to assess Plaintiff's medical claims, as well as an examination under oath ("EUO"). (*Id.*) In March 2012, Plaintiff participated in an EUO and an IME. (*Id.* at 24-26; dkt. no. 113-6 at 2; *see also* dkt. no. 116 at 54.)

**2.     Settlement with Allstate**

Allstate, Mr. Mendoza's insurer, issued a check for $14,194.18 on August 12, 2011, after Plaintiff executed a document releasing Allstate and Mr. Mendoza from further liability. (Dkt. no. 113-7 at 2–3; dkt. no. 113-8 at 2–3.) Allstate issued a second check for $805.82 on or around August 23, 2011. (Dkt. no. 113-7 at 3.) Plaintiff refused to cash the checks, however, until he received an affidavit from Mr. Mendoza attesting

to his assets and clarifying whether he carried additional insurance. (*See id.* at 4-5.) In November 2011, Allstate informed Plaintiff that it had failed to locate Mr. Mendoza to complete the affidavit. (*Id.* at 5-6.) According to Allstate's records, Plaintiff agreed to cash the check on November 10, 2011. (*Id.* at 6.)

### 3. Medical Problems Following the Accident

Plaintiff complained of injuries to both of his shoulders, his neck, and his back after the accident. (Dkt. no. 2-1 ¶ 10.) He sought treatment for his shoulders from several providers, including Dr. Hilary Malcarney, Dr. Glenn Miller, and Dr. Renny Uppal. (Dkt. no. 74 at 17, 30-32; dkt. no. 87 at 108-10.) Dr. Uppal operated on Plaintiff's right shoulder in August 2012. (Dkt. no. 74 at 5; dkt. no. 87 at 118-19.) For his cervical spine, Plaintiff consulted with Dr. Miller and Dr. James Lynch, among others.[2] (*See* dkt. no. 74 at 30-32, 60-62.)

Defendant required Plaintiff to participate in an IME with Dr. James Olson, who authored a report in March 2012 documenting his review of Plaintiff's medical files and a physical examination.[3] (*Id.* at 74-92.) Dr. Olson's report concludes that there is "no objective evidence substantiating injuries other than soft tissue sprain/strain, contusion-type injuries" following the accident. (*Id.* at 89.)

### B. Procedural Background

On November 13, 2012, Plaintiff filed this lawsuit in the Second Judicial District Court of Nevada in Washoe County. (Dkt. no. 2-1.) According to the Complaint, by refusing to issue UIM coverage to Plaintiff, Defendant was negligent, breached a contract, breached the covenant of good faith and fair dealing, and violated Nevada's unfair trade practices laws. (Dkt. No. 2-1 at 4.) Plaintiff seeks, among other remedies, general, compensatory, special, and punitive damages. (*Id.* at 5.)

---

[2] The Court previously struck any expert opinions offered by Dr. Lynch. (Dkt. no. 56.) In accordance with that ruling, the Court has only considered evidence from Dr. Lynch in his capacity as a treating physician.

[3] Plaintiff has moved to strike Dr. Olson's report. (Dkt. no. 101.) As discussed below, the Motion to Strike attacks the report's credibility, but fails to offer any legal reason for striking the report.

Defendant removed the lawsuit to this Court on January 28, 2013; the same day, Defendant filed a motion to dismiss Plaintiff's claims for breach of the covenant of good faith and fair dealing and for violations of Nevada's unfair trade practices statutes. (Dkt. nos. 1, 3.) The Court denied the motion to dismiss, holding that, contrary to Defendant's assertions, Plaintiff could state a claim for bad faith before establishing whether Defendant had breached the insurance contract. (Dkt. no. 30.)

Defendant proceeded to file four separate motions for summary judgment. (Dkt. nos. 69, 70, 71, 72.) Three motions attacked Plaintiff's contract-based claims, Plaintiff's claim under Nevada's unfair trade practices laws, and Plaintiff's request for punitive damages. (Dkt. nos. 70, 71, 72.) The fourth motion contested whether the car accident caused Plaintiff's injuries. (Dkt. nos. 69, 74.) In response, Plaintiff filed two countermotions for summary judgment; those motions, however, were untimely, and the Court would not consider them.[4] (*See* dkt. nos. 91, 92, 112.)

Together, Defendant's four motions exceeded the local rules' page limit. (*See* dkt. no. 107.) The Court accordingly denied the motions without prejudice and ordered their consolidation. (*Id.*) Because Defendant had engaged different attorneys to address its arguments, the Court allowed Defendant to proceed with the motion on causation as it was originally filed.[5] (Dkt. no. 112; *see* dkt. nos. 69, 74.) On April 21, 2015, Defendant submitted an omnibus motion consolidating its remaining arguments. (Dkt. no. 113.)

### III. MOTIONS FOR SUMMARY JUDGMENT

#### A. Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the

---

[4] Plaintiff's countermotions were identical to his responses to Defendant's motions for summary judgment. (*See* dkt. nos. 87, 88, 91, 92.) Despite the Court's ruling that Plaintiff's untimely countermotions would not be considered, the Court has reviewed Plaintiff's responses in deciding the motions at hand.

[5] Defendant filed a corrected version of the fourth motion. (Dkt. no. 74.) For clarity, this Order will cite to the corrected version.

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Finally, the Court notes that Plaintiff is proceeding *pro se.* Although Plaintiff must comply with the procedural rules governing this case, the Court will "construe pleadings liberally" in Plaintiff's favor. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam). The Court, moreover, "must consider as evidence in [Plaintiff's] opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### B.     Analysis

In separate motions, Defendant posits four reasons for summary judgment. First, Defendant contends that all of Plaintiff's claims fail as a matter of law because Plaintiff did not satisfy a condition precedent of his insurance policy with Defendant. (Dkt. no. 113 at 10-15.) Defendant further argues that Plaintiff cannot demonstrate that the car accident caused the injuries for which he seeks compensation through Defendant's UIM policy. (Dkt. no. 74 at 10-13.) Finally, Defendant argues that Plaintiff has not presented any evidence for his claims under Nevada's laws prohibiting unfair trade practices, NRS § 686A.310, or any evidence suggesting that punitive damages are warranted. (Dkt. no. 113 at 15-29.) These arguments are considered in turn.

#### 1.     Failure to Satisfy a Condition Precedent

The parties dispute the import of the insurance policy, which "is a contract between a policyholder and an insurer in which the policyholder agrees to pay premiums in exchange for financial protection from foreseeable, yet unpreventable, events." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 620 (Nev. 2011). Generally, insurance policies are adhesion contracts, meaning the insurer drafts the document

6

without giving the policyholder an opportunity to negotiate the terms. *Id.* at 621. "It follows that 'any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured.'" *Id.* (quoting *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1156 (Nev. 2004)).

Defendant contends that it need not provide UIM coverage to Plaintiff because he both breached the policy and failed to carry out a condition precedent. (Dkt. no. 113 at 10-11.) A condition precedent to a contractual obligation "calls for the performance of some act after a contract is entered into, upon which the corresponding obligation to perform immediately is made to depend." *NGA #2 Ltd. Liab. Co. v. Rains*, 946 P.2d 163, 168 (Nev. 1997). "When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that it complied with that term." *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 962 (Nev. 2011).

Defendant insists that its insurance policy unambiguously required Plaintiff to obtain Defendant's consent before settling his claim with Allstate. (Dkt. no. 113 at 11-12.) In a subsection entitled "Legal Action Against Us," the policy states that Defendant "may not be sued unless there is full compliance with all the terms of this policy." (Dkt. no. 113-12 at 6.) The operative term appears in Section III, which governs UIM coverage. (*See* dkt. no. 117-1 at 5–8.) The term allows Defendant to withhold UIM coverage for bodily injury "if [a] person or the legal representative of that person makes a settlement without [Defendant's] written consent." (*Id.* at 8.)

If these provisions are enforced as written, Defendant argues, then all of Plaintiff's claims must fail because Plaintiff either failed to satisfy a condition precedent, or breached the policy. *See Ellison v. California State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990) ("It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written."). Defendant, in turn, would lack any contractual obligation to provide Plaintiff with UIM

///

7

coverage. Defendant further contends that no genuine dispute of material fact exists as to whether Plaintiff complied with the policy's terms. The Court disagrees.

Plaintiff concedes that he settled his claim with Allstate, but argues that he received Defendant's approval before settling. (Dkt. no. 116 at 5-6; *see also* dkt. no. 113-7 at 2 (Allstate records indicating that Plaintiff accepted a settlement on or around August 12, 2011); dkt. no. 113-8 at 2-3 (Plaintiff's notarized settlement agreement with Allstate, dated August 12, 2011).) In his opposition brief, Plaintiff claims to have spoken to Amanda Coleman, one of Defendant's representatives, who "verbally advised and authorized [Plaintiff] to settle the claim." (Dkt. no. 116 at 5.) Even after executing the settlement agreement, Plaintiff insists that he refused to deposit the settlement check until he received confirmation that Mr. Mendoza, the other driver, lacked any additional insurance coverage.[6] (*Id.* at 5-6.) Plaintiff contends that he deposited the check in November 2011, after Lourdes Ramos, another representative of Defendant, verbally gave him permission to do so. (*Id.* at 5-6, 87-88 (emails from Plaintiff to Ms. Ramos seeking advice on "next steps" between October and November 2011).)

Defendant urges the Court to disregard Plaintiff's assertions, arguing that Plaintiff failed to present any admissible evidence to support them. Indeed, Plaintiff fails to reference evidence explicitly supporting his assertion that Ms. Coleman or Ms. Ramos gave him verbal permission to settle and to accept Allstate's payment. (*See* dkt. no. 116 at 5-6.) Importantly, however, Plaintiff offers a letter from Defendant suggesting that Defendant knew of, and implicitly accepted, Plaintiff's settlement with Allstate. (*See id.* at 98-99.) Lisa Caso, a Senior Casualty Claims Supervisor for Defendant, appears to have composed the letter. (*Id.* at 99.) Dated December 5, 2011, about four months after Plaintiff settled with Allstate, the letter states that Plaintiff "ha[s] been compensated by the adverse carrier to the full extent of their bodily injury limits in the amount of $15,000.00." (*Id.* at 98.) The letter further notes that "[w]e [Defendant] have asserted the

---

[6]Defendant's exhibits confirm this — Allstate's internal notes indicate that Plaintiff sought Allstate's help in obtaining proof that Mr. Mendoza did not have additional insurance coverage. (*See* dkt. no. 113-7 at 4-6.)

policy provisions and requested that you [Plaintiff] submit to an Examination Under Oath," and that "we are working diligently to secure adequate information to properly evaluate your claim." (*Id.* at 98-99.)

Together, these statements suggest that Defendant continued to evaluate Plaintiff's claim even though Plaintiff had settled with Allstate, allegedly without proper consent from Defendant. Although Defendant correctly points out that Plaintiff failed to authenticate this document (dkt. no. 117 at 5), courts "tolerate informalities from civil pro se litigants." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *see also Jones v. Blanas*, 393 F.3d at 923. Evidence offered to oppose summary judgment need not be admissible in form; courts "instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). In light of the fact that Defendant does not dispute the letter's authenticity, the Court will not grant summary judgment on the basis of this evidentiary shortcoming.[7] *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("Whether the authentication requirement should be applied to bar evidence when its authenticity is not actually disputed is . . . questionable.").

Rather, reading the evidence in the light most favorable to Plaintiff as the nonmoving party, the Court finds that a genuine dispute of material fact exists as to whether Defendant consented to, or waived its consent to, Plaintiff's settlement with Allstate. Defendant has not met its burden of showing the absence of a genuine dispute of material fact on these issues. *See Zoslaw*, 693 F.2d at 883. Summary judgment on the basis of Plaintiff's settlement with Allstate without Defendant's consent is improper.

### 2. Whether the Car Accident Caused Plaintiff's Injuries

After the car accident, Plaintiff complained of injuries to his shoulders and cervical spine. He sought UIM coverage to compensate for medical costs associated

---

[7]Furthermore, Defendant's own statement of undisputed facts suggests that Defendant was aware of Plaintiff's settlement with Allstate, but continued to move forward with his UIM claim. (*See* dkt. no. 113 at 8 (describing a settlement offer Defendant made to Plaintiff, which accounted for "the $15,000 offset by the underlying tortfeasor").)

9

with those injuries. (*See* dkt. no. 2-1 at 3-4.) Defendant insists that no evidence suggests that the car accident caused Plaintiff's injuries. Defendant accordingly seeks partial summary judgment on Plaintiff's allegation that his shoulder and cervical spine injuries, and their related treatment, arose from the accident. (Dkt. no. 74 at 3.)

Before an insured motorist can collect benefits under a UIM policy, the motorist must show "legal entitlement" to the benefits. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 384 (Nev. 1993). Legal entitlement "mean[s] that the 'insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages.'" *Id.* (quoting *Patrons Mut. Ins. Ass'n v. Norwood*, 647 P.2d 1335, 1338 (Kan. 1982)).

To demonstrate that Plaintiff cannot link his injuries to the car accident, Defendant points to deposition testimony from several treating physicians. According to Defendant, "[n]ot a single doctor testified that the accident caused in any way Plaintiff's shoulder injuries." (Dkt. no. 93 at 3.) For example, Dr. Malcarney, who treated Plaintiff's shoulder injuries, agreed that she could not identify, with a reasonable degree of medical certainty, "what was the exact cause of the complete rotator cuff tear in Mr. Ahuja's right shoulder." (*Id.* at 18.) Dr. Malcarney also confirmed that she could not identify the cause of Plaintiff's left shoulder injury with a reasonable degree of medical certainty. (*Id.* at 20; dkt. no. 74 at 25.) As to the cervical injury, Defendant contends that "the only admissible evidence regarding the cervical injury [is] that it was degenerative." (Dkt. no. 93 at 3.) Dr. Lynch, for example, testified that the symptoms he observed in Plaintiff's cervical spine appeared to be degenerative, not acute. (Dkt. no. 74 at 60–63.)

In his response, Plaintiff points to notes written by his treating physicians, some of which suggest that Plaintiff's injuries occurred because of the accident. Dr. Malcarney's notes, for instance, state: "As Mr. Ahuja reports no shoulder pain immediately prior to the accident, and has now had symptoms bilaterally for a year subsequent to his motor vehicle accident, I feel that his current shoulder symptoms resulted from the car accident." (Dkt. no. 87 at 106.) Dr. Uppal similarly notes: "Most of

the recent problems stem from an auto accident that [Plaintiff] sustained." (*Id.* at 108.) Defendant points out, however, that these notes appear to transcribe Plaintiff's injuries as he presented them to his physicians; they do not necessarily reflect the physicians' opinions about the cause of Plaintiff's injuries. (*See* dkt. no. 93 at 9-10.)

Nevertheless, reading this evidence in the light most favorable to Plaintiff, the Court finds that a genuine dispute of material fact exists as to whether the car accident exacerbated Plaintiff's preexisting injuries. During his deposition, for instance, Dr. Miller clarified that even in light of a preexisting injury, Plaintiff "could have some pain, shoulder pain related to perhaps whatever happened in the automobile. . . . [T]hat's what we kind of refer to as aggravation of a preexisting condition." (Dkt. no. 74 at 26.) Dr. Uppal similarly testified that it is "possible that [the car accident] could have contributed to the increase in the tear to the right shoulder" and to "increase the progression of the tear to the left shoulder." (Dkt. no. 93 at 28.)

Defendant seems to argue — without citing any legal authority — that uncertainty about the precise cause of Plaintiff's injuries means that Plaintiff cannot show that the accident had an impact on his injuries. (*See* dkt. no. 74 at 11-14; dkt. no. 93 at 9-10.) In light of the deposition testimony excerpted above, the Court disagrees. Defendant has failed to demonstrate that a reasonable trier of fact could not find that the car accident was causally linked to Plaintiff's injuries. The Court will therefore deny Defendant's Motion for Partial Summary Judgment as to causation. (Dkt. nos. 69, 74.)

### 3. Statutory Violations and Punitive Damages

Defendant also seeks summary judgment on Plaintiff's claims for punitive damages and for violations of Nevada's unfair trade practice statutes. (Dkt. no. 113 at 15-29.) The Court finds that Defendant is entitled to summary judgment on both claims.

Plaintiff has failed to identify which provisions of Nevada's unfair trade practices statutes are at issue in this case. The Complaint — which was filed while Plaintiff was represented by an attorney — discusses "Nevada's statutory prohibitions against Unfair Trade Practices" and "Nevada's Unfair Trade Practices statutes," but fails to specify the

11

statute to which those labels refer. (*See* dkt. no. 2-1 ¶¶ 12–13.) Because Plaintiff has failed to identify the legal basis for this allegation, the Court will grant summary judgment for Defendant on this allegation.

As for Plaintiff's claim for punitive damages, Plaintiff must demonstrate "by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." NRS § 42.005(1). "Nevada follows the rule that proof of bad faith, by itself, does not establish liability for punitive damages." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 198 (Nev. 1989). Plaintiff has not offered evidence to suggest that a genuine dispute of material fact exists as to this claim. Rather, Plaintiff discusses an unrelated dispute about his son's insurance coverage, and argues that Defendant offered him an unfair settlement and engaged in harassing litigation tactics. (*See* dkt. no. 116 at 22-30.) Plaintiff has not offered evidence indicating that the settlement offer was made on the basis of oppression, fraud, or malice. Moreover, while this Court will not tolerate vexatious litigation tactics, this argument is unrelated to Plaintiff's allegation of oppression, fraud, or malice in the way Defendant handled his UIM claim before this lawsuit began.

Even after reading the evidence in the light most favorable to Plaintiff, the Court finds that Defendant has demonstrated that it is entitled to judgment as a matter of law with regard to Plaintiff's claims for violations of Nevada's unfair trade practices statutes and for punitive damages.

## IV. MOTION TO STRIKE

Plaintiff moves to strike two of Defendant's expert reports. (Dkt. no. 101.) Plaintiff takes issue with the weight and credibility of the reports, but offers no basis for striking them other than his own disagreement with the underlying evidence. The Motion to Strike is therefore denied.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

determines that they do not warrant discussion because they do not affect the outcome of these Motions.

It is therefore ordered that Defendant's Motion for Summary Judgment (dkt. no. 113) is granted in part and denied in part. The motion is granted with regard to Plaintiff's claims for punitive damages, and for violations of Nevada's unfair trade practices statutes. The motion is denied in all other respects.

It is further ordered that Defendant's Motion for Partial Summary Judgment (dkt. nos. 69, 74) is denied.

It is further ordered that Plaintiff's Motion to Strike (dkt. no. 101) is denied.

DATED THIS 11th day of September 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE